## 53750. DRAKE v. THE STATE.

WEBB, Judge.

D. D. Drake appeals his conviction of motor vehicle theft, Criminal Code § 26-1813. We affirm.

1. Drake made several conflicting statements during the course of the pre-trial investigation, at times inculpating himself either alone or together with Johnny Baxter and others, and at other times exculpating himself at Baxter's expense. The police officer who had been in charge of the investigation testified at trial as to some of the conflicting statements, and on lengthy cross examination counsel for Drake kept inquiring of him why he had believed some of Drake's statements but not others, why he chose finally to believe that Drake but not Baxter was involved in the crime.

This line of inquiry culminated in questions about one of the Drake statements where he said he was driving out the first truck stolen from Tom's Peanuts, followed by Baxter in the second, at which time Drake was in a collision with a white car. The questioning of the officer by Drake's counsel continued:

"Q In one of those statements you said [Drake] drove the first truck out and he was followed by Johnny Baxter; is that right? A Yes sir. Q Everybody was going to Commerce? A Yes sir. Q Based on the location of Tom's Peanuts what road would you take to get to Commerce? A 441 North. Q Mr. Drake was in the lead as far as his statement to you; is that right? A Yes sir. Q How far had he driven before he had this accident with this white car? A Approximately I would say a mile, maybe a mile and a half. Q Who was behind him at that time? A To my knowledge no one. He said that [Baxter] was behind him. Q You mean you believe him when he said he ran into the car, but you don't believe him when he says [Baxter] was behind him? A The only thing I can say [as to] whether I believed [Baxter or Drake] is [whether] the investigation tends to prove or disprove [Baxter's] participation in the case, and we were unable to put him anywhere near the scene of the theft. These are people we talked with, witnesses where he was at, through the polygraph operater in Atlanta and other means that were used . . ."

At the mention of the word "polygraph" Drake's counsel, responding as if to some imperative primordial alarum, a syndrome apparently contagious in this type case (e.g., *Porter v. State,* 237 Ga. 580, 582 (229 SE2d 384) (1976)), claimed that the reference to it was "completely unsolicited," that evidence as to polygraph tests is inadmissible, and that his client had been so irreparably harmed and injured that only a mistrial could remedy the mischief. The trial court overruled that motion, and we find no reversible error.

"The decision in *Stack* [*v. State,* 234 Ga. 19, 23 (214 SE2d 514) (1975)] did not require, as a matter of law, that a new trial be granted on every occasion where a jury is apprised that a lie detector test has been given." *Herlong v. State,* 236 Ga. 326, 328 (223 SE2d 672) (1976). In that case it was held not reversible error to admit testimony that the witness Brown was given a lie detector test and that immediately thereafter arrest warrants were obtained, even though this evidence tended to impute veracity to Brown's testimony at trial implicating the defendant. It was said that this evidence was admissible to explain the conduct of the officers in obtaining warrants.

*Porter v. State,* 237 Ga. 580 (3), supra, reaffirms the *Herlong* premise that not every oblique reference to a lie detector test is a calamity of such proportion as to wreck the trial. There, much like *Herlong,* the reference to the polygraph test tended to strengthen the credibility of the state's chief witness who was a co-conspirator testifying against defendant under a grant of immunity. Even under those circumstances, however, no reversible error was found.

The instant case is even stronger, for here Baxter was not a witness against Drake. Moreover, as in *Porter,* it was not the state but defense counsel who induced the complained-of testimony. As we have seen, it was Drake's counsel who was attempting to learn why the officer had arrested Drake but not Baxter, who had been implicated by one of Drake's statements. As the district attorney stated at trial in response to the motion for mistrial, counsel was "goading the witness into explaining why he believed Johnny Baxter." Having finally obtained the

answer he had been seeking through several pages of transcript, he is in no position now to complain. "Induced error is impermissible." *Edwards v. State,* 235 Ga. 603, 604 (221 SE2d 28) (1975); *Hill v. State,* 237 Ga. 523, 525 (228 SE2d 898) (1976).

2. Enumeration of error 2 appears to complain as to the form of the indictment, but as no attack was made upon it below it will not be considered here.

3. Drake complains of the following charge: "Now, the crime as charged in the indictment consists of the overall offense of motor vehicle theft, and a conviction of the Defendant is authorized on proof beyond a reasonable doubt that the Defendant took one or both of the trucks described in the indictment with the intent to deprive the owner of the use thereof. It is immaterial whether the Defendant took one or both trucks insofar as the indictment in this case is concerned."

Drake's contention that the state was required to prove the theft of both vehicles is without merit. *Burkett v. State,* 133 Ga. App. 728 (3b) (212 SE2d 870) (1975) and cits.; *Butts v. State,* 141 Ga. App. 119 (2) (232 SE2d 634) (1977) and cits.

*Judgment affirmed. Marshall, J., concurs. Deen, P. J., concurs specially.*

Submitted April 7, 1977 — Decided April 14, 1977.

*J. H. Affleck, Jr.,* for appellant.

*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Assistant District Attorney,* for appellee.

Deen, Presiding Judge, concurring specially.

". . . [T]he lie detector's reliability and technique have not yet gained scientific acceptance as an accurate means of detecting deception. . ." *Salisbury v. State,* 221 Ga. 718, 719 (146 SE2d 776). In accord, ". . . [M]any 'facts' and comments . . . that are passed on to laymen fall into the category of science fiction or myth. . ." Harold G. Coffin, Ph. D. Invertebrate Zoology, University of Southern California, *Liberty,* Vol. 70, Number 5, September-October, 1975, pages 11-16, discussing the

impossibility of the staggering complexity of a living cell resulting from primordial chance.

*Stack v. State,* 234 Ga. 19, 25 (214 SE2d 514), is not a holding that the " 'polygraph is a poisonous tree whose every fruit is forbidden'," but specifically in cases where there is an elevation and imputation of veracity, as in *Stack* and the case sub judice, is the evidence inadmissible. *Herlong v. State,* 236 Ga. 326, 328 (223 SE2d 672), a 4-3 decision, where veracity was involved, nevertheless created an exception as explaining the conduct of officers obtaining an arrest warrant, not present in the case sub judice. I concur with Justice Hill's dissent therein: "A recurring criticism by the public, lawyers and judges is that the law is too complicated. . . We had simplicity before, complexity now."

*Porter v. State,* 237 Ga. 580, 582 (229 SE2d 384), is similar to *Stack,* as well as the case under consideration, and is inapposite to the exception contained in *Herlong* and would require a reversal, except for the fact that the trial judge's offer to instruct the jury to disregard the reference to polygraph was specifically not accepted, and thus waived. In *Porter* this instruction was accepted and given, eliminating the controlling rule in *Stack* wherein a reversal was required in cases similar therein. *Edwards v. State,* 235 Ga. 603, 604 (221 SE2d 28) and *Hill v. State,* 237 Ga. 523, 525 (228 SE2d 898), refer to charges agreed to by counsel, not evidence admitted as to polygraph not otherwise agreed to, except by waiver of instruction to disregard.

Thus not only was counsel's imperative primordial alarum timely and meritorious under the uncontradicted legal and scientific presumption of cause and effect but was likewise a syndrome contagious under the time honored absolute and rule of stare decisis requiring the reversal under *Stack,* supra, except for the voluntary subsequent agreement not to receive the instructions to disregard offered by the court, as was actually given in *Porter.*