A92A1997. GARMON v. WAREHOUSE GROCERIES FOOD CENTER, INC.
(427 SE2d 308)

BIRDSONG, Presiding Judge.

Appellant/plaintiff Terry Steven Garmon appeals the order of the trial court granting appellee/defendant Warehouse Groceries' motion for summary judgment in this suit for malicious prosecution and false imprisonment.

The following material facts are undisputed based on the posture of the record before us on appeal: Appellant and his wife entered appellee's grocery store. As he crossed the front of the store and approached the tobacco display, appellant was noticed by the store manager who was in his office, and by two store employees performing security duty behind a see-through mirror in a security area above the meat counter. The tobacco area is one of the top three theft areas in the store. Appellant approached the display (which was located in close proximity of and visible to the cash registers in the front of the store) in a normal manner, openly and without looking around took possession of a can of snuff, which he "got . . . really fast," and then "immediately walked off" to the area where his wife was shopping. He opened the snuff, removed some snuff which he put into his mouth, and placed the snuff can in his pocket. He was observed engaging in this open and visible conduct by the store manager and by both employees. The manager considered the point in the store where he observed appellant openly dipping snuff as being "out of the way" and "out of the normal shopping pattern." By the time appellant opened the snuff can, one of the employees had repositioned himself in a back room, about ten feet away, watching the incident through the glass of the double doors of a cooler. Appellant continued shopping with his wife for about 45 minutes, and the couple bought approximately $68 worth of groceries. The couple, being under surveillance, went to the cash register; one of the employees reported to the manager what the two employees performing security duties had observed. The couple's groceries were rung up on the cash register and during that time appellant neither removed the snuff from his pocket nor made any offer to pay for it. As appellant's wife was in the process of paying the grocery bill, appellant was confronted about the snuff by the store manager. Appellant, who never denied having the snuff and never attempted to run, replied that he was sorry and attempted to pay for the item. Appellant was asked to accompany the manager to the office, grabbed by the arm in a non-confrontational manner, and directed to the office. Appellant attempted to explain that he put the snuff can in his pocket to prevent the open contents from spilling, he was going to pay for it, and he had forgotten about it being there. He again offered to pay for it but his offer was declined. At some point, appellant signed a store information form, captioned "Shop Lifter Information," and bearing a signature block line labelled "Shop Lifter's Signature." Several minutes thereafter, appellant was told that the police would be called.

When the police arrived, appellant asked if he would be arrested; the store manager said, "yes," and explained the store's policy that any adult arrested for shoplifting would be prosecuted. The manager explained what had happened to the police, "and the police made the

judgment and asked [the manager] if he wanted to prosecute," and the manager replied in the affirmative. The police informed appellant he would be arrested for shoplifting, read him his rights, and placed him under arrest. Before leaving the premises and after being arrested, appellant was allowed in the presence of the police to pay for and take possession of the snuff. Appellant does not remember whether the police asked him what had happened; however, he did not speak with the police about what was going on, except to tell them that he was upset and did not understand it. After appellant was arrested for shoplifting, he was taken to the station in handcuffs, fingerprinted, booked, and released on bond.

Appellant appeared in city court for a preliminary hearing, but, after appellant requested through his counsel to be bound over to state court for jury trial, the store employees then present were not called to the stand to testify; neither did the witnesses discuss their testimony with the prosecutor. Appellant subsequently was re-booked, during a three-hour procedure at the holding facility, and was required to appear in state court under a charge of shoplifting. However, at that time, the prosecutor entered a nolle prosequi of the case on the grounds that due to anticipated conflicts in testimony, the state would be unable to prove appellant had the requisite criminal intent and that appellant had been allowed to pay for the snuff at the time of his arrest. Thus, the testimony of any store employees was not taken in state court. *Held:*

1. Facts and inferences asserted in briefs and not reasonably supported by the record cannot be considered on appellate review. See *Behar v. Aero Med Intl.*, 185 Ga. App. 845 (1) (366 SE2d 223). However, in ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843). Nevertheless, a movant for summary judgment who is a defendant may discharge his burden by pointing out by reference to the affidavits, depositions, and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). At summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the nonmoving party's case. Rather, that party must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the nonmoving party's case. In other words summary judgment is appropriate

when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the nonmoving party, concludes that the evidence does not create a triable issue as to each essential element of the case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that is, the record reveals there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. *Lau's Corp.*, supra at 495.

2. "The lack of probable cause is the gravamen of a malicious prosecution action. [Cits.] Probable cause is absent when the circumstances would satisfy a reasonable person that the accuser had no ground for proceeding except a desire to injure the accused." *K-Mart Corp. v. Coker*, 261 Ga. 745, 746 (1) (410 SE2d 425). Although criminal intent is a material element of shoplifting, a store employee need not determine the subjective intent of a suspected shopper before seeking an arrest and prosecution under the shoplifting statute. Id. at 747 (2). Furthermore, "criminal intent may be inferred from the 'words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.' " Id. The basic question is whether, under the attendant circumstances, the suspected shopper's conduct would "cause reasonably prudent persons to believe they had probable cause to prosecute [the shopper] for the offense of shoplifting." Id. at 747 (4). "Although a jury normally decides whether probable cause exists, the judge determines the issue when the material facts are[, as in this case,] undisputed." Id. at 746 (1); *Williamson v. Alderman*, 148 Ga. App. 297, 298 (1) (251 SE2d 153). Malice is also a material element of malicious prosecution, but " '[a] total want of probable cause is a circumstance from which malice may be inferred.' " *McMillan v. Day Realty Assoc.*, 159 Ga. App. 366, 368 (2) (283 SE2d 298). Examining the evidence of record, we are satisfied that there exists no genuine issue of material fact that appellant was subjected to arrest and prosecution without probable cause. We conclude from an examination of the undisputed facts of record that a reasonably prudent person, with the same knowledge as appellee's store manager, would believe he had probable cause to prosecute appellant for shoplifting; accordingly, the trial court did not err in granting appellee summary judgment based on the undisputed facts before it. Compare *Turner v. Bogle*, 115 Ga. App. 710 (155 SE2d 667).

Independent of the evidence of record concerning the circumstances surrounding appellant's arrest and booking for shoplifting, there exists an additional legal reason for the trial court's finding of the existence of probable cause. The unrefuted evidence of record establishes that in appellant's appearance before the city court (see generally OCGA §§ 17-7-22; 17-7-23), appellant's counsel requested

appellant be bound over for a Cobb County jury trial. Appellant was forthwith bound over to the State Court of Cobb County where nolle prosequi ultimately was entered. It has long been the rule in this state that committal of a defendant by a magistrate is prima facie, although not conclusive, evidence of probable cause for such prosecution. *Monroe v. Sigler*, 256 Ga. 759, 760 (3) (353 SE2d 23); *Luke v. Hill*, 137 Ga. 159 (5) (73 SE 345). Although the effect of such a prima facie showing of probable cause varies among jurisdictions, we favor the view followed by most courts that this type of prima facie establishment of probable cause "may be overcome by the accused, as plaintiff in the subsequent action for malicious prosecution, through producing evidence that, if believed, would show want of probable cause." 52 AmJur2d, Malicious Prosecution, § 176; cf. *Meyers v. Glover*, 152 Ga. App. 679, 682 (263 SE2d 539), overruled in part on other grounds, *McCord v. Jones*, 168 Ga. App. 891, 893 (311 SE2d 209); but cf. *Monroe*, supra at 761 (6) (appearing to endorse the stricter fraud or corruption rebuttal standard to a trial court's ruling on a motion for judgment of acquittal at trial). However, in practical application, if a prima facie establishment of probable cause is not rebutted, it becomes conclusive in legal effect (*Brady v. Stiltner*, 21 SE 729, 732 (SC W.Va.)), particularly as to the disposition of a pending motion for summary judgment.

In the instant case, however, the magistrate did not conduct an evidentiary "investigation," within the meaning of OCGA § 17-7-22, but bound appellant, pursuant to the latter's request, forthwith to the state court for trial by jury. This procedural tactic by appellant constituted the waiver of any preliminary examination by the magistrate. And the better view appears to be that *the waiver of a preliminary examination by a person charged with a crime is prima facie evidence of probable cause* the same as if defendant had been duly committed by the magistrate following an evidentiary investigation or hearing. *Brady*, supra at 731 (1); see also *Bryant v. Murray*, 79 SE2d 243, 247 (3) (SC N.C.). That is, the waiver of a preliminary hearing by appellant in the criminal prosecution for shoplifting is tantamount to a finding by the magistrate that there is sufficient cause to believe appellant guilty, thereby giving rise to a prima facie establishment of probable cause for appellant's arrest and prosecution for shoplifting. *Hess v. Oregon German Baking Co.*, 49 P. 803, 804 (1) (SC Ore.); *Leggett v. Montgomery Ward & Co.*, 178 F2d 436 (10th Cir.) (waiver was equivalent to finding of probable cause). As the record unrefutedly establishes appellant waived the preliminary hearing and investigation by successfully requesting to be bound over to the state court for trial by jury, as a matter of law there resulted the prima facie establishment of probable cause. At this point, appellant could no longer rest on his pleadings to establish lack of probable cause but would be

required to "point to specific evidence giving rise to a triable issue" thereof. *Lau's Corp.*, supra at 491; see also *Brady*, supra. Review of the record reveals no such "specific evidence" and, for this additional reason, the trial court did not err in granting summary judgment to appellee.

Further, the record contains at most only a shadowy semblance of an issue as to the existence of malice. When there exists but a shadowy semblance of a material issue, a case may nevertheless be decided as a matter of law where the evidence clearly and palpably shows that the jury could reasonably draw but one conclusion. *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 68 (4) (397 SE2d 576).

3. Appellant asserts the trial court erred in failing to apply the standard established in *Martin v. Reitz*, 152 Ga. App. 854 (264 SE2d 305) as appellee's agents knowingly and intentionally withheld evidence from the investigating officer and city court magistrate, which, if presented, would most likely have resulted in no criminal prosecution of this case. The record reveals no facts from which a reasonable inference can be drawn that appellee's agents knowingly and intentionally withheld evidence from either the investigating officer or the city court.

One employee testified in his deposition that the manager did inform the police of "what the situation was"; he "explained to the police what happened." The other employee testified in his deposition that the manager told the police that appellant took a can of snuff, but that was when the employee left and went to the parking lot as the witness hates to hear rights read to people. Contrary to appellant's contentions, there exists no inconsistency in this testimony, which has not been reasonably explained, within the meaning of *Gentile v. Miller &c., Inc.*, 257 Ga. 583 (361 SE2d 383). The record in its totality reveals not even the shadowy semblance of an issue that the agents of appellee store have knowingly and intentionally withheld evidence as enumerated. Moreover, *Martin*, supra, is factually distinguishable from this case; as in *Martin* a factual controversy existed as to whether the witness had given testimony to the magistrate which he knew to be false, misleading, or materially inaccurate.

Further, by requesting to be bound over for jury trial and not demanding a preliminary hearing, appellant's own conduct and procedure created a situation where the magistrate would not have any requirement to examine appellee's witnesses prior to binding appellant over for jury trial in the state court. Accordingly as the witnesses were not called to testify, their mere silence at the hearing is not the equivalent of the giving of false, misleading, or materially inaccurate information within the meaning of *Martin*, supra.

Additionally, we find distinguishable the cases of *Bi-Lo v. McConnell*, 199 Ga. App. 154 (404 SE2d 327); *Atlantic Zayre v. Meeks*,

194 Ga. App. 267 (390 SE2d 398); *Wilson v. Wheeler's, Inc.*, 190 Ga. App. 250 (378 SE2d 498); and *Voliton v. Piggly Wiggly*, 161 Ga. App. 813 (288 SE2d 924), which describe circumstances under which a reasonable person would be required to investigate further before initiating a shopper's arrest and prosecution. In the case at bar, the manager was an eyewitness to appellant's conduct; his observations were confirmed by the report of at least one employee performing security duty; appellant admitted his failure to pay for the merchandise when other store items were entered on the register and he attempted, in the manager's presence, to pay belatedly for the item (but was not allowed to do so until after he was arrested); before his arrest, appellant admits he explained to the manager that he had forgotten he was in possession of the snuff and had in fact intended to pay for the item. Basically, unlike cases where physical (crushed soft-drink can) or documentary evidence (sales receipt) exists to corroborate factual defenses claimed by a shoplifter suspect, appellant's sole defense pertained to his subjective intent, that is, his claim that he intended to pay for the snuff and did not intend to steal it. But, as above discussed, a store employee does *not* need to determine the shopper's subjective intent before seeking an arrest and prosecution. *K-Mart*, supra at 747 (2). Further, there exists no showing in the record of any physical or documentary evidence which might have been examined, during the course of an additional investigation, which would further have corroborated appellant's vocal claims regarding his subjective intent. Thus, unlike *Bi-Lo, Atlantic Zayre, Wilson*, and *Voliton*, supra, there exists no duty to investigate further under these circumstances.

4. Pretermitting whether, because appellee's employees had the requisite probable cause to believe appellant had shoplifted the snuff, appellant's claim of false imprisonment was subject to disposition in favor of appellee by grant of summary judgment (OCGA § 51-7-60), is appellant's abandonment of any allegation of error regarding the false imprisonment claim. Appellant failed to provide citations of authority or specific argument in his appellate brief regarding the trial court's grant of appellee's motion for summary judgment as to the claim of false imprisonment. Accordingly, any claim of error regarding the grant of summary judgment as to the false imprisonment claim has been abandoned. Court of Appeals Rule 15 (c) (2).

In view of our above holdings and applying the precedent of *Lau's Corp.* to the evidence of record, we find the trial court did not err in granting summary judgment to appellee store; and all of appellant's enumerations of error are without merit.

*Judgment affirmed. Beasley and Andrews, JJ., concur.*

DECIDED JANUARY 13, 1993.

*Hughes & Gibson, Ralph E. Hughes,* for appellant.
*Goldner, Sommers, Scrudder & Bass, Glenn S. Bass,* for appellee.